UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| JONG HAM, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>JPMORGAN CHASE BANK, N.A., a<br>Delaware corporation.<br><br>                    Defendants. | NO. _____<br><br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiff JONG HAM ("**Plaintiff**" or "**Mr. Ham**") and hereby files this Complaint against Defendant JPMorgan Chase Bank, N.A., ("**Defendant**" or "**Chase Bank**") for violations of the Electronic Funds Transfer Act (15 U.S.C. § 1693, et seq.) as implemented by Regulation E (12 C.F.R. § 1005.1 et seq.;), breach of contract, negligence, violations of the NACHA Rules, and violation of the Washington Consumer Protection Act, and in support thereof alleges as follows:

## I.      <u>PARTIES</u>

1.      Plaintiff Jong Ham is an individual residing in Pierce County, Washington.

2.      Defendant JPMorgan Chase Bank, N.A. is an American multinational investment bank and financial services company headquartered in New York City and incorporated in Delaware.

COMPLAINT FOR DAMAGES - 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

3.      At all relevant times, Chase Bank engaged in business in Pierce County, Washington, including but not limited to, the acts and practices described herein.

## II.      JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1), and 1367. There is complete diversity of citizenship as to the parties, and the amount in controversy exceeds $75,000. The case also presents federal question based on the Electronic Fund Transfer Act (EFTA) (15 U.S.C. § 1693 et seq.).

5.      Venue is proper in the Tacoma division of this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims and a substantial part of property that is the subject of the action is situated in this District.

## III.      FACTUAL ALLEGATIONS

### A.      Mr. Ham's Accounts with Chase Bank.

6.      Mr. Ham has been the victim of a long-standing pattern of fraudulent ACH withdrawals from his Chase Bank checking account ending in **18 ("Checking Account") and savings account ending in **86 ("Savings Account") (collectively, the "Accounts").

7.      Chase Bank failed to detect these fraudulent withdrawals from Mr. Ham's accounts, totaling approximately **$364,200.00**.

8.      After being notified of these fraudulent withdrawals, Chase Bank subsequently failed to properly investigate Mr. Ham's claims, failed to provide its investigative file, and failed to respond to repeated requests for assistance.

9.      Mr. Ham, who is 62 years old, has been a long time customer of Chase Bank. In connection with opening his accounts with Chase Bank, Mr. Ham entered into a Deposit Account Agreement and Privacy Notice ("Deposit Account Agreement") with Chase Bank. *See* **Exhibit A**.

10.      The Deposit Account Agreement is a contract between Chase Bank and Mr. Ham setting forth the rules and regulations governing Mr. Ham's Accounts and providing the rights and obligations of the parties.

COMPLAINT FOR DAMAGES - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

11.     Between his personal and business savings, checking, and investment accounts, Mr. Ham has significant deposits with Chase Bank. Mr. Ham is a Chase Private Client, which is a status conferred to Chase Bank customers who meet certain eligibility requirements, including maintaining an average beginning day balance of $150,000 or more in a Chase Private Client checking or savings account.[1]

12.     A Chase Private Client, in addition to many other benefits, receives personalized attention from a "team of professionals" dedicated to helping manage the Private Client's "financial and everyday banking needs" and "plan the extraordinary." [2]

13.     This team of professionals includes a dedicated Chase Private Client Banker, who provides day-to-day banking assistance to the Client, as well as a J.P. Morgan Private Client Advisor, who provides personalized investment guidance.[3]

14.     Since becoming a Chase Private Client, Mr. Ham has worked closely and often with his Chase Private Client team at the Lakewood, Washington Chase branch location ("Lakewood Chase"), including Jason Kwon, his Private Client Banker; Derik Moon, his Personal Banker; and Sonya T. Simmons, the Lakewood Chase Branch Manager.

15.     Since opening his Accounts until April 2022, Mr. Ham did not utilize online or mobile banking.

16.     Instead, Mr. Ham made personal visits to the Lakewood Chase to use the ATM or work directly with his Private Client Banker or Personal Banker to perform services such as deposits, withdrawals, and bill payments and transfers. However, he did not often require banking services relating to the Checking and Savings Accounts.

---

[1] https://account.chase.com/consumer/banking/chase-private-client-checking-account-ps/WW22632?sitelink=headline&jp_cmp=rb/CPC+2022_Brand_Exact_CPC_SEM_US_DeskTab_Standard_NA/sea/p74096737286/Brand&gad=1&gclid=CjwKCAjwuqiiBhBtEiwATgvixO6G5lm6zxxf4B0obeIT88UTNYvNOXeJRkOIVMYdnQBapPRtSgQ9nRoCsS0QAvD_BwE&gclsrc=aw.ds
[2] https://www.chase.com/personal/checking/private-client/team
[3] Id.

COMPLAINT FOR DAMAGES - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

17.     Mr. Ham also received paper account statements through the mail each month and had no way to access his account statements online.

18.     Upon information and belief, Chase Bank sent each monthly account statement on or around the first day of the following month (*i.e.*, January statement sent on February 1st).

19.     Though Mr. Ham maintained substantial balances in his Checking and Savings Accounts, these Accounts did not have frequent or regular monthly activity.

20.     Mr. Ham's Checking Account had very few transactions in a given billing statement.

21.     Similarly, Mr. Ham's Savings Account often had no monthly activity, except for the accruing interest, with only the occasional withdrawals every few months.

22.     Because the Checking and Savings Accounts did not have frequent or regular monthly activity and maintained large account balances, Mr. Ham relied on Chase Bank's fraud detection services and his Private Client team of professionals to monitor and safeguard his deposits.

**B.      Mr. Ham discovers hundreds of fraudulent ACH withdrawals from his Accounts and reports the fraud to Chase Bank.**

23.     On April 11, 2022, Mr. Ham visited the Lakewood Chase to use the ATM located inside of the branch.

24.     Mr. Ham obtained a receipt showing the balance of the Checking Account and was surprised to see the balance was abnormally low.

25.     Mr. Ham then requested Ms. Simmons' assistance and informed her of the Checking Account's low balance.

26.     Ms. Simmons helped Mr. Ham transfer funds from his Savings Account to the Checking Account to cover the low balance and also printed him copies of the prior three months of statements for the Checking Account, upon his request.

COMPLAINT FOR DAMAGES - 4

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

27.     Later that same day, Mr. Ham reviewed the statements and noticed many fraudulent transactions reflected throughout the Checking Account statements.

28.     Mr. Ham immediately called the Chase Bank customer service line and was advised to call back during business hours.

29.     Early in the morning on April 12, 2022, Mr. Ham called the customer service line again and was advised to visit his local Chase Bank branch when it opened for business.

30.     Mr. Ham received no other assistance regarding these fraudulent transactions.

31.     The same day, while en route to the Lakewood Chase, Mr. Ham received a phone call from Mr. Moon, Mr. Ham's Personal Banker, who wanted to discuss with him some issues with Mr. Ham's accounts.

32.     When he arrived at the Lakewood Chase, Mr. Ham was shocked to learn from Mr. Moon that very large sums of money were withdrawn from the Checking Account.

33.     Mr. Moon and Mr. Ham reviewed the Checking Account transaction history together.

34.     Mr. Ham informed Mr. Moon that he did not make or authorize nearly all of the transactions they reviewed.

35.     During this time, Mr. Moon was on the phone with unidentified Chase Bank personnel to discuss the fraudulent activity.

36.     Acknowledging and confirming that Mr. Ham's Checking Account was the target of fraud, Mr. Moon placed the Checking Account on a restricted or inactive status and transferred the remaining balance to a newly opened checking account.

37.     Mr. Moon asked Mr. Ham to review two-years' worth of Checking Account statements and mark all of the fraudulent transactions.

38.     Mr. Ham spent hours combing through his Checking Account statements and marked each transaction that he did not recognize or authorize.

COMPLAINT FOR DAMAGES - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

39.     Mr. Ham identified hundreds of fraudulent ACH withdrawals in his Checking Account that occurred between April 24, 2020 through April 12, 2022, totaling approximately **$211,793** in stolen funds.

40.     Mr. Ham returned to the notated statements to Mr. Moon and Ms. Simmons, the Branch Manager.

41.     On April 14, 2022, Mr. Ham filed a police report detailing the stolen funds from his Checking Account at the request of Chase Bank.

42.     Upon information and belief, Chase Bank also notified the Tacoma police of the fraudulent ACH transfers.

43.     On April 15, 2022, Mr. Ham and his brother again visited the Lakewood Chase to discuss how to recover the stolen funds, where they met with Ms. Simmons and Mr. Moon.

44.     Mr. Moon represented the fraudulent transfers were ACH withdrawals, that this type of fraud is very common, and that he helps customers with similar problems on a regular basis.

45.     When asked how much of the funds will be recovered, Mr. Moon represented that approximately 50% of the funds could be recovered.

46.     Mr. Ham's brother then asked Ms. Simmons and Mr. Moon to confirm that only Mr. Ham's Checking Account had been compromised and to confirm that his other accounts were unaffected.

47.     Mr. Moon represented that only the Checking Account was compromised.

48.     It was only when Mr. Ham's brother insisted that Mr. Moon check the other accounts that Mr. Moon pulled up Mr. Ham's Savings Account statements during the meeting.

49.     It was then the parties realized the Savings Account had significant fraudulent activity as well.

COMPLAINT FOR DAMAGES - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

50.     Mr. Ham identified over 100 fraudulent ACH withdrawals in his Savings Account that occurred between September 29, 2020 through April 12, 2022, totaling approximately **$152,408** in stolen funds.

51.     In total, approximately **$364,200** was fraudulently withdrawn from Mr. Ham's Checking and Savings Accounts.

52.     Mr. Moon placed the Savings Account on a restricted or inactive status and transferred the remaining balance to a newly opened savings account.

53.     Mr. Ham and his brother asked if Mr. Ham should initiate a credit freeze with the major credit bureaus based on this fraud activity. Mr. Moon represented to Mr. Ham that it was unnecessary because this was bank fraud rather than identity theft.

54.     Ms. Simmons represented to Mr. Ham that Chase Bank would be able to recover a significant portion of the fraudulent ACH withdrawals and that Chase Bank had an investigative team working to recover the funds.

55.     Ms. Simmons then recommended Mr. Ham speak to the Chase Bank investigative team and offered to schedule a conference call the following week after the investigative team had some time to look into the claims.

56.     On April 21, 2022, Mr. Ham and his brother returned to the Lakewood Chase branch location for a conference call with Ms. Simmons and the Chase investigative team members working on Mr. Ham's fraud claims.

57.     Ms. Simmons and the Chase investigative team provided conflicting information about how much of the fraudulently withdrawn funds could be recovered.

58.     After the phone call, Mr. Ham informed Ms. Simmons he was confused by the conflicting statements and asked for clarification.

59.     When Ms. Simmons and Mr. Ham called the investigative team again, a member of the team, for the very first time, informed Mr. Ham that none of the fraudulently withdrawn

COMPLAINT FOR DAMAGES - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

funds would be recovered and that Chase Bank would not take responsibility for recovering or reimbursing any of the funds.

60.     After the phone call, Ms. Simmons expressed her shock to Mr. Ham for the statement and again represented that Mr. Ham was a very important customer and that Chase Bank would work cooperatively with him to recover the funds.

61.     Ms. Simmons informed Mr. Ham that a Chase Bank executive would call him to explore his options.

62.     Mr. Ham never received that call.

63.     In late April 2022, having received no further communication from Chase Bank, Mr. Ham again visited the Lakewood Chase. He spoke to Mr. Kwon, his Chase Private Client Banker, about the fraudulently withdrawn funds.

64.     Mr. Kwon represented that he was aware of the situation and that Chase Bank would do everything it could to resolve the matter to Mr. Ham's satisfaction, and urged Mr. Ham to be patient.

65.     In the meantime, Mr. Kwon advised Mr. Ham to transfer the significant sums in his Checking and Savings Accounts into a Chase investment account.

66.     Mr. Kwon represented that the investment account would be a much safer place to keep Mr. Ham's money because only Mr. Kwon would have access to the account, and he would manage the account himself.

67.     Mr. Ham accepted Mr. Kwon's advice and transferred a significant sum of money into a Chase brokerage account.

**C.      Chase Bank fails to properly investigate the fraud claims in breach of the Deposit Account Agreement and in violation of the Electronic Funds Transfer Act.**

68.     By mid-May 2022, Mr. Ham had still not received any communication from Chase Bank personnel regarding the fraudulent activity on his Accounts.

COMPLAINT FOR DAMAGES - 8

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

69.     Instead, Mr. Ham received several letters from the Chase Bank Customer Claims Department, reporting under the following Claim Numbers: 74714284380001; 84714667850003; 154744030280001;   154744030280003;   294744670210002;   334744312380001;   and 974749423670002.

70.     The Customer Claims Department informed Mr. Ham that it completed its investigation into Mr. Ham's claims and denied nearly the entirety of Mr. Ham's claim for the fraudulently withdrawn $364,200.

71.     The Customer Claims Department credited only two transactions, returning approximately $124.43 to Mr. Ham.

72.     The Customer Claims Department's denial letters all concluded with a notice that Mr. Ham was entitled to request the information it used for its research into claims.

73.     On or around September 20, 2022, Mr. Ham sent Chase Bank a letter ("September 20th Letter") requesting all information and documents the Customer Claims Department used in its research into Mr. Ham's claims and providing a detailed legal analysis of Mr. Ham's entitlement to the return of $150,590.62, *at a minimum*, under the National Automated Clearing House Association ("NACHA") Operating Rules and 12 CFR § 1005.6 ("Regulation E"), which implements the Electronic Fund Transfer Act ("EFTA"). Mr. Ham demanded the immediate return of $150,590.62, to which he was entitled by law.

74.     Chase Bank is a NACHA Direct Member and is required to comply with NACHA Rules and requirements.

75.     Mr. Ham explained that under the NACHA Rules, a customer's bank can reimburse the customer for any unauthorized ACH transactions within the 60-day settlement period counting backwards from the date the customer makes the fraud report because NACHA allows the customer's bank to initiate a reversal with the bank originating the fraudulent ACH transaction (the fraudster's bank) during this 60-day window.

COMPLAINT FOR DAMAGES - 9

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

76.     Accordingly, the NACHA Rules allowed recovery of fraudulent transactions that occurred between February 10, 2022 through April 11, 2022, which entitled Mr. Ham to reimbursement of **$140,306.58**.

77.     Mr. Ham also explained that under Regulation E, which implements the EFTA, a consumer must report an unauthorized electronic fund transfer that appears on a periodic statement within 60-days of the financial institution's transmittal of the statement to avoid liability for subsequent transfers.

78.     If the consumer fails to do so, the consumer's liability shall not exceed the amount of the unauthorized transfers that occur after the close of the 60 days and before notice to the institution, and that the institution establishes would not have occurred had the consumer notified the institution within the 60-day period.

79.     For the Checking Account, the first fraudulent transaction occurred on May 5, 2020. Upon information and belief, Chase Bank transmitted the May 2020 statement on or around June 1, 2020, such that the 60-day period closed on July 31, 2020.

80.     For the Savings Account, the first fraudulent transaction occurred on September 29, 2020. Upon information and belief, Chase Bank transmitted the September 2020 statement on October 1, 2020, such that the 60-day period closed on November 30, 2020.

81.     Mr. Ham notified Chase Bank of the fraud on April 12, 2022.

82.     Thus, Regulation E allowed recovery of fraudulent transactions from the Checking Account that occurred between May 5, 2020 through July 31, 2020, and from the Savings Account that occurred between September 29, 2020 through November 30, 2020.

83.     This entitled Mr. Ham to reimbursement of **$10,284.04.**

84.     Mr. Ham was hopeful that Chase Bank would its own investigation and analysis of Mr. Ham's claims, which would lead to the same conclusion regarding his entitlement to recover these sums.

COMPLAINT FOR DAMAGES - 10

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

85.     Instead, over two months later, on or around November 28, 2022, Chase Bank responded to Mr. Ham's September 20th Letter, reaffirming its denials of Mr. Ham's claims ("November 28th Response Letter").

86.     Chase Bank's November 28th Response Letter entirely failed to address Regulation E and NACHA, instead merely concluding that Mr. Ham's claims were "reported out of timeframe" with no legal basis other than a general reference to the Deposit Account Agreement's section titled "In case of Errors or Questions About Your Electronic Fund Transfers." *See* Exhibit A, Section III.D.5, at 13.

87.     Further, the November 28th Response Letter was replete with inconsistencies and bizarre factual inaccuracies that demonstrated Chase Bank's negligence and complete failure to properly investigate Mr. Ham's claims with the level of care and competency due to its customers.

88.     For example, the November 28th Response Letter denies two of Mr. Ham's claims on the basis that they were "reported out of time frame" and refers to the Deposit Account Agreement as support. The Section III.D.5 of the Deposit Account Agreement, titled "In case of Errors or Questions About Your Electronic Fund Transfers," provides:

> **5. In case of errors or questions about your electronic funds transfers**
> If you think your statement is wrong, or if you need more information about a transaction listed on it, see the *How to Contact Us* section.
> **For personal accounts only, the following procedures apply:**
> We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared. Please provide us with the following:
> • Your name and account number;
> • A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
> • The amount of the suspected error.
> We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. However, if we need more time, we may take up to 45 days to investigate your complaint or question. If we do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If your first account deposit is less than 30 days before the date of the suspected error, the 10-business-day period is extended to 20 business days. If your first account deposit is less than 30 days before the date of the suspected error or the transaction occurred at a point-of-sale location or outside the U.S., the 45-day period is extended to 90 days.
> If you call us, we may require that you send us your complaint or question in writing within 10 business days. If we do not receive it within 10 business days, we may not credit your account.
> We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

89.     Specifically, Chase Bank concluded that that Claim No. 154744030280001 was "reported out of timeframe" despite the charges covering April 1–12, 2022, and that

COMPLAINT FOR DAMAGES - 11

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Claim No. 084714667850003 was "reported out of timeframe" despite the charges covering February 1–April 11, 2022.

90.     However, both of these Claims were reported within the 60-day period after the first statement on which the error appeared, consistent with the Deposit Account Agreement, and were timely reported under the Deposit Account Agreement.

91.     Perplexingly, Chase Bank also denied Claim Nos. 294744670210002 and 154744030280003 on the basis that these claims were for "loan payments the client [Mr. Ham] received and spent."

92.     Mr. Ham has no loans with Chase Bank and did not have any loans with Chase Bank at any time relevant to these claims.

93.     It is unclear Chase Bank was referring to and its reference to these phantom loans raises serious concerns about the level of care and diligence with which Chase Bank was investigating Mr. Ham's claims.

94.     On January 27, 2023, Mr. Ham responded to Chase Bank's November 28th Response Letter again requesting immediate reimbursement of the $150,590.62, requesting Chase Bank provide a legal basis for its conclusions, and requesting Chase Bank provide all information and documents it used in its research and investigation into Mr. Ham's claims, as is Mr. Ham's right under the Deposit Account Agreement.

95.     On March 1, 2023, Chase Bank responded to Mr. Ham's January 27, 2023 letter. Chase Bank again reaffirmed their denial of Mr. Ham's claims, provided no reasoning or legal basis for its decision, and did not provide any of the requested documents or information it used in its investigation.

96.     Chase Bank explained only that the loans referenced in its November 28th Response Letter were "scheduled loan payments to third party lenders, not loans from Chase."

97.     Mr. Ham did not schedule or authorize any loan payments to third-party lenders.

COMPLAINT FOR DAMAGES - 12

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

98.     These were fraudulent ACH withdrawals, which is why Mr. Ham included these transactions as part of his fraud claim, but Chase Bank simply decided these were legitimate transactions without providing any of the underlying documents or information for this decision.

## CAUSES OF ACTION

### COUNT I
**Violations of Regulation E and the Electronic Funds Transfer Act and**
**(12 C.F.R. § 1005.1 et seq.; 15 U.S.C. § 1693, et seq.)**

99.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

100.     Defendant violated Regulation E, 12 C.F.R. §§ 1005, *et seq.*, whose "primary objective" is "the protection of individual consumers," 12 C.F.R. § 1005.1(b), and which "carries out the purposes of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693, *et seq.*, the 'EFTA,'" 12 C.F.R. § 1005.1(b)).

101.     The EFTA, which is implemented by Regulation E, authorizes a private right of action, pursuant to 15 U.S.C. § 1693(m), against a bank that fails to comply with any provision of the EFTA, including the provision limiting a consumer's liability for unauthorized transfers." *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021).

102.     Under the EFTA (15 U.S.C. § 1693g), the liability of a consumer, such as Plaintiff, for unauthorized electronic funds transfers is limited to the *lesser* of $50.00, or the amount of money (or value of property or services) obtained in such unauthorized electronic fund transfer prior to the time that the financial institution (*i.e.*, Defendant) is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has or may be effected.

103.     Similarly, under Regulation E (12 CFR § 1005.6(b)(3)), a consumer must report an unauthorized electronic fund transfer that appears on a periodic statement within 60-days of the financial institution's transmittal of the statement to avoid liability for subsequent transfers.

COMPLAINT FOR DAMAGES - 13

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

104.    If the consumer fails to do so, the consumer's liability shall not exceed the amount of the unauthorized transfers that occur after the close of the 60-days and before notice to the institution, and that the institution establishes would not have occurred had the consumer notified the institution within the 60-day period.

105.    Plaintiff notified Defendant of the unauthorized electronic fund transfers in his Accounts on April 12, 2022.

106.    Defendant was aware that Plaintiff did not utilize online banking and relied on receipt of paper account statements in the mail.

107.    Defendant was aware that Plaintiff rarely used the Checking and Savings Accounts as activity on these accounts were minimal in the years leading up to the first unauthorized electronic fund transfer.

108.    Moreover, Defendant was aware that Plaintiff, a Chase Private Client, often used in-person banking services at the Lakewood Chase, for even routine services such as bill payments, deposits, and withdrawals or transfers.

109.    On April 12, 2023, Plaintiff notified Defendant of numerous fraudulent, unauthorized electronic fund transfers from his Accounts.

110.    Defendant requested Plaintiff to review two-years of his account statements for all unauthorized transfers.

111.    Accordingly, as of April 12, 2022, Defendant knew that Plaintiff's Checking Account had unauthorized electronic transfers beginning April 24, 2020.

112.    As of April 15, 2020, Defendant also knew that Plaintiff's Savings Account had unauthorized electronic transfers beginning September 29, 2020.

113.    In total, $364,200 in unauthorized electronic transfers were fraudulently withdrawn from Plaintiff's Accounts.

COMPLAINT FOR DAMAGES - 14

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

114.    After investigating Plaintiff's claims, Defendant denied nearly the entirety of Plaintiff's claim for the fraudulently withdrawn $364,200, including claims that were timely reported and admitted by Defendant as timely reported.

115.    Defendant credited only two transactions, returning approximately $124.43 to Plaintiff.

116.    Defendant wrongfully imposed liability upon Plaintiff of approximately $364,075.57.

117.    Defendant violated the EFTA (15 U.S.C. § 1693g) and Regulation E (12 CFR § 1005.6(b) by failing to limit Plaintiff's liability for the unauthorized electronic transfers from his Accounts and imposing over $364,075.57 of liability on Plaintiff.

118.    Further, Defendant knowingly and willfully concluded that Plaintiff's claims were not in error, when such conclusion could not reasonably have been drawn from the information available to Defendant at the time of its investigation.

119.    Defendant has not used at all relevant times, and is not currently using, the resources and procedures necessary to resolve the levels of fraud that occurred in Plaintiff's Accounts.

120.    Plaintiff repeatedly requested from Defendant the documents and information it used in its investigation.

121.    Defendant did not provide such documents and information or provide any basis for its failure to provide such information.

122.    Defendant violated the EFTA (15 U.S.C. § 1693f) and Regulation E (12 CFR § 1005.11) by failing to conduct a good faith investigation into the unauthorized transactions that Plaintiff reported and by failing to provide the documents and information it relied on during its investigation as requested by Plaintiff.

123.    Plaintiff is therefore entitled to recover treble damages under 15 U.S.C. § 1693f(e).

COMPLAINT FOR DAMAGES - 15

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

124.    As a direct and proximate result of Defendant's violation of the EFTA and Regulation E, Plaintiff has lost significant sums of money and has incurred damages in an amount to be determined at trial but not less than $364,075.57.

**COUNT II**
**BREACH OF CONTRACT**

125.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

126.    In connection with opening his accounts with Chase Bank, Plaintiff entered into the Deposit Account Agreement with Defendant.

127.    The Deposit Account Agreement is a valid and binding contract between the parties.

128.    Section III.D.5 of the Deposit Account Agreement, titled "In case of Errors or Questions About Your Electronic Fund Transfers" requires the customer to notify Chase Bank of any errors regarding an electronic fund transfer no later than 60 days after Chase Bank sends the customer the first statement on which the error appeared.

129.    Chase Bank is then required to conduct its investigation pursuant to certain time limitations set forth therein, send the customer a written explanation for any conclusion that there was no error, and provide the customer with copies of the documents it used in its investigation upon the customer's request.

130.    Plaintiff notified Defendant of fraudulent electronic fund transfers in his Accounts on April 12, 2022.

131.    Thus, Plaintiff's claim of error is timely as to all fraudulent electronic fund transfers that occurred in his Accounts between February 10, 2022 through April 11, 2022. Accordingly, Plaintiff was entitled to recovery of $140,306.58, pursuant to Section III.D.5 of the Deposit Account Agreement.

COMPLAINT FOR DAMAGES - 16

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

132.    Defendant breached Section III.D.5 of the Deposit Account Agreement and its duty of good faith and fair dealing by concluding that the transactions occurring between that time frame were not made in error and by failing to reimburse Plaintiff for those fraudulent electronic fund transfers.

133.    Moreover, Defendant specifically concluded that Claim No. 154744030280001 was "reported out of timeframe" despite the charges covering April 1–12, 2022, and that Claim No. 084714667850003 was "reported out of timeframe" despite the charges covering February 1– April 11, 2022.

134.    However, both of these Claims were reported within the 60-day period after the first statement on which the error appeared, consistent with the Deposit Account Agreement, and were timely under the Deposit Account Agreement.

135.    Defendant breached Section III.D.5 of the Deposit Account Agreement and its duty of good faith and fair dealing by concluding that Claim Nos. 154744030280001 and 084714667850003 were untimely.

136.    On September 20, 2022 and January 27, 2023, in response to Defendant's denial of his claims, Plaintiff requested copies of the documents and information Defendant used in its investigation. Defendant did not provide the requested documents or information or otherwise provide any basis for failing to do so.

137.    Defendant breached Section III.D.5 of the Deposit Account Agreement and its duty of good faith and fair dealing by failing to provide this information.

138.    As a direct and proximate result of Defendant's breaches of the Deposit Account Agreement, Plaintiff has incurred damages in an amount to be determined at trial but no less than $140,306.58.

COMPLAINT FOR DAMAGES - 17

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

## COUNT III
## NEGLIGENCE

139.   Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

140.   Defendant, as Plaintiff's bank, had a duty to exercise due care to not expose Plaintiff to an unreasonable risk of injury.

141.   Defendant had a duty to exercise reasonable care and competence in investigating Plaintiff's claims of the significant fraudulent ACH withdrawals from his Accounts.

142.   Defendant had a duty to comply with NACHA Rules and make reasonable efforts to recover the fraudulently withdrawn funds from the bank(s) originating the fraudulent ACH transactions under the NACHA Rules.

143.   Defendant conferred to Plaintiff his status of Chase Private Client and represented to him that a Chase Private Client receives an extra level of attention and service due to the significant sums that a Chase Private Client must deposit with Defendant.

144.   Defendant represented to Plaintiff that he was provided a "team of professionals" to help manage his banking needs and provide assistance.

145.   Defendant breached its duty to Plaintiff by failing to protect Plaintiff from unreasonable risk of fraudulent activity on his Accounts.

146.   Defendant, including the team of professionals purportedly providing Plaintiff with additional care and services, failed to properly monitor Plaintiff's Accounts and notice the sufficiently suspicious circumstances and activity on Plaintiff's Accounts, given the historical low activity of the Accounts prior to the fraud.

147.   Defendant breached its duty to Plaintiff by failing to comply with NACHA Rules and make reasonable efforts to recover the fraudulently withdrawn funds from the bank(s) originating the fraudulent ACH transactions under the NACHA Rules.

COMPLAINT FOR DAMAGES - 18

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

148.     Defendant also breached its duty to Plaintiff by thereafter failing to exercise reasonable care and competence in investing Plaintiff's claims.

149.     Defendant failed to provide any legal basis or explanation as to why it denied nearly the entirety of Plaintiff's claims.

150.     Defendant failed to consistently apply its own Deposit Account Agreement terms and made decisions contrary to law.

151.     Defendant inexplicably denied several claims on the basis that the claims were for scheduled loan payments to third parties, despite Plaintiff not having authorized any scheduled loan payments and Defendant not conducting any investigation that would have supported such conclusion.

152.     As a proximate and foreseeable result of Defendant's breach of its duties to Plaintiff, Plaintiff has been harmed.

153.     As alleged herein, approximately $364,200 was fraudulently withdrawn from Plaintiff's Accounts without Plaintiff's authorization for a period of nearly two years.

154.     Had Defendant exercised its duty of care to Plaintiff and properly monitored Plaintiff's Accounts, Defendant would have discovered the fraudulent activity much earlier.

155.     Had Defendant exercised its duty of care to Plaintiff, none of, or a vast majority of, the fraudulent ACH withdrawals would not have occurred on Plaintiff's Accounts, or would have been recovered.

156.     Had Defendant exercised its duty of care to Plaintiff and complied with NACHA Rules and attempted to recover the fraudulent ACH withdrawals under NACHA, Plaintiff would have recovered all, or a vast majority, of the fraudulent ACH withdrawals.

157.     Further, had Defendant exercised its duty of reasonable care and competence in investing Plaintiff's claims, Defendant would have recovered all, or a vast majority, of the fraudulent ACH withdrawals.

COMPLAINT FOR DAMAGES - 19

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

158.   As a proximate and foreseeable result of Defendant's breach of its duties to Plaintiff, Plaintiff has incurred damages in an amount to be determined at trial but not less than $364,075.57.

**COUNT IV**

**Violation of NACHA Rules**

159.   Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

160.   Defendant is a NACHA Direct Member and is required to comply with NACHA Rules and requirements.

161.   Under NACHA Rules, there is a 60-day "look back" period under which a consumer is entitled to reimbursement of fraudulent charges starting from the date the fraud is reported to the bank and counting backwards 60 days.

162.   The NACHA Rules allow a bank in Defendant's position (the Receiving Depository Financial Institution or "RDFI") to return the original ACH withdrawal request to the bank that originated the request (the Originating Depository Financial Institution or "ODFI") if the RDFI reimburses its consumer and submits its return request to the ODFI "no later than the opening of business on the Banking Day following the sixtieth calendar date following the Settlement Date of the original [withdrawal request]." NACHA Operating R. § 3.13.1(b).

163.   The NACHA Rules then provide that the ODFI "must accept" a timely and proper return request from the RDFI, which in effect, completes the reversal of the unauthorized or fraudulent ACH transaction. NACHA Operating R. § 2.12.1.

164.   Thus, under the NACHA Rules, a consumer's bank (the RDFI) can reimburse the consumer for any unauthorized ACH transactions within the 60-day settlement period starting from the date the consumer makes the report because NACHA allows the RDFI to initiate a reversal with the ODFI during this 60-day window.

COMPLAINT FOR DAMAGES - 20

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

4865-3737-3813, v. 1

165.    Defendant was obligated to follow the aforementioned process after receiving Plaintiff's report of fraudulent ACH withdrawals from his Accounts.

166.    Defendant failed to comply with NACHA Rules.

167.    Defendant failed reimburse Plaintiff for the fraudulent ACH withdrawals pursuant to the NACHA Rules.

168.    Defendant failed to submit a return request to the ODFI(s) pursuant to the NACHA Rules.

169.    As a direct and proximate result of Defendant's violation of the NACHA Rules, Plaintiff has lost significant sums of money and has incurred damages in an amount to be determined at trial but not less than $364,075.57.

## COUNT V

### Violation of the Consumer Protection Act, RCW 19.86 et. Seq.

170.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

171.    Defendant represented that a Chase Private Client, in addition to many other benefits, receives personalized attention from a "team of professionals" dedicated to helping manage the Private Client's "financial and everyday banking needs" and "plan the extraordinary.

172.    Defendant represented in its Deposit Account Agreement and communications to Plaintiff that it would conduct an investigation into timely reported fraud claims.

173.    Defendant misled and deceived Plaintiff in relation to its duties to Plaintiff and its practices regarding the safekeeping of Plaintiff's Accounts.

174.    These deceptive practices were conducted in the course of trade or commerce.

175.    These deceptive practices have the potential to deceive a substantial portion of the public who bank with Defendant and violates the public interest.

176.    Defendant also violated the EFTA, Regulation E, and NACHA Rules.

COMPLAINT FOR DAMAGES - 21

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

177.     Thus, Defendant has committed per se violations of the Washington Consumer Protection Act.

178.     The public has an interest in discouraging large financial institutions from shirking its obligations to its customers and violating banking and financial laws and regulations.

179.     Defendant continues to engage in these deceptive practices.

180.     As a result of Defendant's deceptive practices, Plaintiff has incurred damages in an amount to be determined at trial but not less than $364,075.57.

181.     Pursuant to RCW 19.86 et seq, Plaintiff is entitled to recover his actual damages, treble damages up to $25,000, and attorneys' fees.

## IV.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jong Ham prays for the following relief:

A.     Damages against Defendant for no less than $364,075.57, the exact amount to be determined at trial;

B.     Statutory and treble damages as allowable by law;

C.     An award of attorneys' fees and costs as allowed or required by law; and

D.     Such other and further relief as this Court deems just equitable and proper.

DATED this 3rd  day of August, 2023.

CAIRNCROSS & HEMPELMANN, P.S.


*/s/ Binah B. Yeung*
Binah B. Yeung, WSBA No. 44065
E-mail: byeung@cairncross.com

*/s/ Amy H. Yoon*
Amy H. Yoon WSBA No. 58102
E-mail: ayoon@cairncross.com

524 Second Avenue, Suite 500
Seattle, WA  98104-2323
Telephone: (206) 587-0700
Facsimile: (206) 587-2308

Attorneys for Plaintiff Jong Ham

COMPLAINT FOR DAMAGES - 22