The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JONG HAM, an individual,

        Plaintiff,

    v.

JPMORGAN CHASE BANK, N.A., a Delaware
corporation,

        Defendant.

Civil Action No. 3:23-cv-05698-BJR

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS**

## I.     INTRODUCTION

Plaintiff Jong Ham ("Plaintiff") brings this lawsuit against Defendant JPMorgan Chase Bank, N.A. ("Chase Bank" or "the Bank") for alleged violations of the Electronic Funds Transfer Act ("EFTA"), the National Automated Clearing House Association ("NACHA") Operating Rules, and the Washington Consumer Protection Act ("WCPA"), as well as for breach of contract and negligence. Dkt. No. 1 ("Comp."). Currently before the Court is Chase Bank's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff opposes. Dkt. Nos. 17 and 24. Having reviewed the motion, opposition, and reply thereto, as well as the record of the case and the relevant legal authority, the Court will grant in part and deny in part the motion. Specifically, the Court grants the motion as to the EFTA claim as well as the claim based on the NACHA Rules but denies the motion as to Plaintiff's breach of contract,

breach of implied duty of good faith and fair dealing, negligence, and WCPA claims. The reasoning for the Court's decision follows.

## II.        FACTUAL BACKGROUND

### A.        The Relationship between Plaintiff and Chase Bank

Plaintiff maintains several accounts at Chase Bank, including personal and business savings, checking, and investment accounts. Comp. at ¶ 11. He is a "Chase Private Client", which is a status conferred on Chase Bank customers who meet certain eligibility requirements, including maintaining an average daily balance of at least $150,000. *Id.* Plaintiff alleges that as a Chase Private Client, he "receives personalized attention from a 'team of professionals' dedicated to helping manage [his] 'financial and everyday banking needs'". *Id.* at ¶ 12. He further alleges that he does not utilize online or mobile banking but rather, makes personal visits to the Bank to work directly with "his Private Client Banker" to complete tasks "such as deposits, withdrawals, [] bill payments, and transfers." ¶ 16.

Chase Bank sent monthly paper statements for each account through the mail to Plaintiff on or around the first day of each month. ¶ 17. Plaintiff alleges that his personal checking and savings accounts had "very few transactions in a given billing statement" so he was not in the habit of opening the statements for those accounts but rather he "relied on Chase Bank's fraud detection services and his Private Client team of professionals to monitor and safeguard his deposits." ¶¶ 20-22.

### B.        The Fraud

On April 11, 2022, Plaintiff went to the Bank to withdraw money from his personal checking account and was surprised when the withdrawal receipt showed a balance that was "abnormally low." *Id.* at ¶ 24. He asked Sonya Simmons, the branch manager, to provided him

with the prior three months' statements for the account. ¶¶ 24, 26. Plaintiff took the statements home and reviewed them later that day where he noticed "many fraudulent transactions reflected" on the statements. ¶ 27. He alleges that he called Chase Bank's customer service line and was advised to call back during business hours. ¶ 28. He called again the next morning on April 12, 2022, and was advised to visit his bank branch when it opened for business. ¶ 29. Plaintiff alleges that as he was driving to the bank branch, he received a telephone call from his Chase "Personal Banker", Derik Moon, who advised Plaintiff that he wanted to discuss "some issues with [Plaintiff's] accounts." ¶ 31.

When Plaintiff arrived at the Bank, Mr. Moon informed Plaintiff that "very large sums of money" had been withdrawn from his checking account. ¶ 32. Plaintiff alleges that he and Mr. Moon reviewed the transaction history for the account and Plaintiff informed Mr. Moon that he had not made nor authorized nearly all of the transactions they reviewed. ¶ 34. Ultimately, Plaintiff identified "hundreds of fraudulent ACH withdrawals … that occurred between April 24, 2020 through April 12, 2022, totaling approximately $211,793 in stolen funds." ¶ 39 (emphasis in original removed). Chase Bank placed a restriction on the checking account and transferred the remaining balance to a newly opened account. ¶ 36.

On April 15, 2022, Plaintiff and his brother returned to Chase Bank to meet with Mr. Moon and Ms. Simmons "to discuss how to recover the stolen funds" and Plaintiff claims that Mr. Moon reassured him that at least fifty percent of the funds could be recovered. ¶¶ 43, 45. Plaintiff further alleges that Mr. Moon represented that only his checking account had been compromised but when Plaintiff's brother insisted that Mr. Moon check Plaintiff's remaining accounts, they discovered that his savings account had "significant fraudulent activity as well." ¶¶ 47-49. Indeed, Plaintiff identified over 100 fraudulent ACH withdrawals from his savings account totally

approximately $152,408 that occurred between September 29, 2020 and April 12, 2022. ¶ 50. Mr. Moon placed a restriction on the savings account and transferred the remaining balance to a newly opened saving account. ¶ 52.

Plaintiff claims that in total, approximately $364,200 was fraudulently withdrawn from his personal checking and savings accounts. ¶ 51. Plaintiff further claims that Ms. Simmons reassured him that the Bank would be able to recover a significant portion of the fraudulent withdrawals. ¶ 54. He alleges that Ms. Simmons recommend that Plaintiff speak to the Chase Bank investigative team and offered to schedule a conference call for the following week after the team had time to investigate the claims. ¶ 55.

On April 21, 2022, Plaintiff, his brother, and Ms. Simmons had a conference call with the investigative team. Plaintiff alleges that it is during this call that Chase Bank informed him "for the very first time" that "none of the fraudulently withdrawn funds would be recovered and that the Bank would not take responsibility for recovering or reimbursing any of the funds." ¶ 59. Plaintiff claims that Ms. Simmons expressed "shock" at the Bank's response and "represented to him that he is "a very important customer" and that a "Chase Bank executive would call him to explore his options." ¶¶ 60-61. Plaintiff alleges that he "never received that call." ¶ 62.

### C.      Chase Bank's Investigation into the Fraud

According to Plaintiff, Chase Bank ultimately refused to reimburse him for all but two of the fraudulent transactions (the two transactions that the Bank did credit to his account totaled $124.43). *Id.* at ¶ 70. Between April 12 and May 5, 2022, the Bank sent Plaintiff numerous letters rejecting each of his requests for reimbursement for the fraudulent transactions (except for the two transactions noted above) and providing cursory explanations for the denials. Dkt. No. 18, Exs. A-G.

Plaintiff requested that Chase Bank reconsider its denial decisions and further requested that the Bank provide him with a copy of the information it used to investigate his claims. Comp. at ¶ 73. Plaintiff supplemented his reconsideration request with a letter from an attorney he hired to assist him with this matter. The attorney's letter explained that Plaintiff is entitled to recover at least $150,590.62 under the NACHA Operating Rules and Regulation E, which implements the EFTA. *Id.* Chase responded to Plaintiff's counsel's letter with a letter dated November 28, 2022, in which it continued to deny responsibility for all transactions, except two transactions totaling $124.43. *Id.* ¶ 85. The November 28 letter did not address the NACHA Operating Rules nor Regulation E, nor did it provide a copy of the materials that Chase Bank used to investigate his claims. *Id.* ¶ 86, Dkt. No. 24, Ex. C.

The parties exchange letters again on January 27, 2023 and March 1, 2023 but were unable to reach an agreement; Plaintiff filed this lawsuit on August 3, 2023. ¶¶ 94-95.

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (stating that the court construes the complaint in the light most favorable to the nonmoving party, accepting all well-pleaded facts as true and drawing all reasonable inferences in the non-moving party's favor). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678, quoting *Twombly*, 550 U.S. at 555, 557.

## IV.    DISCUSSION

As stated above, Plaintiff brings the following claims against Chase Bank: (1) the EFTA Claim—Plaintiff asserts that the Bank violated the EFTA by failing to reimburse him for, and by failing to conduct a good-faith investigation of, the fraudulent charges withdrawn from his accounts; (2) Breach of contract—Plaintiff alleges that the Bank breached the Deposit Account Agreement between it and Plaintiff by failing to reimburse him for approximately $140,000 of the fraudulent transfers, for failing to conduct a reasonable investigation into the fraudulent transfers, and for failing to provide Plaintiff with a copy of its investigative file; (3) Negligence—Plaintiff alleges that the Bank failed to exercise due care in investigating the fraudulent transfers, in complying with NACHA Rules, and in providing him "attention and service" due to the fact that he is a Chase Private Client; (4) the NACHA Rules claim—Plaintiff alleges that the Bank failed to comply with the relevant NACHA Rules to his detriment; and (5) the WCPA claim—Plaintiff alleges that the Bank misled and deceived Plaintiff in relation to its duties and obligations to protect Plaintiff's accounts in violation of the Washington Consumer Protection Act. The Court will address each claim in turn.

### A.    The EFTA Claim

Congress enacted the Electronic Fund Transfer Act of 1978 ("EFTA") to "address concerns raised by the increasing prevalence of electronic banking transactions." *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 580-581 (9th Cir. 2021). The EFTA seeks to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in

electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The Act covers a range of electronic money transfers and "subjects them to a litany of procedural requirements designed to protect consumers from transactions made in error or without their consent." *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009) (citing 15 U.S.C. §§ 1693a(6),1693b–1693f). It permits consumers to file actions for violations of its provisions and awards payment of attorneys' fees for successful suits. 15 U.S.C. § 1693m(a). However, actions against financial institutions for failure to comply with the EFTA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). Where, as here, a plaintiff asserts that the accounts were subject to "purely unauthorized transfers", the "one-year limitation is triggered by each individual transfer." *Widjaja v. JPMorgan Chase Bank, N.A.*, 2019 WL 8108716, at *6 (C.D. Cal. Nov. 19, 2019) *quoting Soileau v. Midsouth Bancorp Inc.*, 2019 WL 5296499, at *4 (W.D. La. July 19, 2019), *report and recommendation adopted*, 2019 WL 5296505 (W.D. La. Oct. 18, 2019).

Here, the complaint alleges that the first fraudulent transfer occurred on April 24, 2020 and the last fraudulent transfer occurred on April 12, 2022. This means that Plaintiff was required to file his EFTA claim based on these transfers by April 24, 2021 and April 12, 2023, respectively. The complaint was not filed until August 3, 2023; thus, Plaintiff's EFTA claim is time-barred.

Plaintiff attempts to avoid this outcome by urging this Court to apply the discovery rule to his EFTA claim. "The 'discovery rule,' which is read into state statutes of limitations in federal question cases, postpones the beginning of the limitations period of a federal claim from the date the party is injured to the date when the party discovers or should have discovered the injury, exercising reasonable diligence." *O'Malley v. Kass Management Services, Inc.*, 539 F. Supp. 3d 935, 940 (N.D. Ill. 2021) *quoting Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d

713, 717 (7th Cir. 1994). Plaintiff argues that he was unable to ascertain the full scope of the fraud against him until March 1, 2023 when Chase Bank "sent its final correspondence to [him] again denying his claims and without providing any of the requested information." Dkt. No. 24 at 9. Thus, Plaintiff argues, under the discovery rule the EFTA limitations period did not begin to run until March 1, 2023.

Plaintiff's argument fails for several reasons. First, courts are disinclined to apply the discovery rule to EFTA claims because typically, as here, a plaintiff would have discovered the fraudulent transfers through the exercise of due diligence—*i.e.*, simply opening the monthly bank statements. *See*, *e.g.*, *Walbridge v. Northeast Credit Union*, 299 F. Supp. 3d 338, 351 (D.N.H. 2018) ("In the context of the EFTA claims…the discovery rule [will often] not apply because a plaintiff could reasonably discover an injury by reviewing his bank statement or online account which would show that a fee or fees had been improperly assessed."); *Harvey v. Google, Inc.*, 2015 WL 9268125, *4 (N.D. Cal. Dec. 21, 2015) ("If [plaintiff] had exercised due diligence, she should have discovered the injury either by looking at her Google account or even more simply, looking at her bank statements."); *Toth v. Scott Credit Union*, 2021 WL 535549, *9 (S.D. Ill. Feb. 2, 2021) (noting that the discovery rule did not save plaintiff's EFTA claim because if plaintiff "had exercised due diligence, she would have discovered her injury either by viewing her online SCU account or her bank statements"); *Park v. Webloyalty.com, Inc.*, 2014 WL 4829465, *5 (S. D. Cal. Sept. 29, 2014) (holding that the discovery rule did not apply because "[a]s soon as [plaintiff] received the first bank statement showing the [] charge, he had reason to know of the basis of his claim. That is when his EFTA claim accrued, and the statute of limitations runs from that date").

Second, even if the Court were to accept Plaintiff's argument that he did not understand the full scope of his injury until Chase Bank refused to reimburse him for the fraudulent transactions, those refusals first occurred between April 12, 2022 and May 5, 2022, more than a year before Plaintiff filed this complaint. Plaintiff's suggestion that the limitations period on the EFTA claim did not begin to accrue until March 1, 2023, the day that Chase Bank sent "its final correspondence" regarding the fraudulent transactions is misplaced. The federal discovery rule does not toll a limitations period until an individual knows the exact perimeters of their claim; rather, an individual is deemed to "know[] or reasonably should know of a claim when he or she knows both the existence and the cause of his injury." *O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002) (internal quotation marks omitted). It is beyond dispute that Plaintiff was at least aware of "the existence and the cause of his injury" no later than May 5, 2022, when Chase Bank issued its last determination on Plaintiff's requests for reimbursement.

Lastly, the Supreme Court's recent decision in *Rotkiske v. Klemm* calls into question whether the discovery rule is even applicable to EFTA claims. 589 U.S. 8 (2019). As noted above, section 1693m(g) of the EFTA provides that "any action under this section may be brought ... within one year from the date of the occurrence of the violation." In *Rotkiske*, the Supreme Court interpreted a similar limitations provision in the Fair Debt Collections Practices Act. *Id.* at 13; 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought ... within one year from the date on which the violation occurs"). Relying on the plain language of the statutory provision, the Supreme Court declined to read the discovery rule into the provision, noting that if Congress had intended for claims under the Act to accrue on discovery, it would have said so as it has in other limitations provisions. *Rotkiske*, 589 U.S. at 14 (citing 12 U.S.C. § 3416; 15 U.S.C. § 1679i; 15 U.S.C. § 77m; 19 U.S.C. § 1621; 26 U.S.C. § 7217(c); 29 U.S.C. §

1113). Since *Rotkiske*, at least one court has declined to apply the discovery rule to an EFTA claim given the similarity of its limitations provision to that of the Fair Debt Collections Practices Act. *See, e.g., O'Malley*, 539 F. Supp. 3d at 940 ("The similar text in the EFTA ('the date of the occurrence of the violation') demands the same result: the discovery rule does not apply."). For the foregoing reasons, the Court concludes that the discovery rule affords Plaintiff no relief under the circumstances of this case.

Alternatively, Plaintiff urges this Court to apply the doctrine of equitable tolling to his EFTA claim. In the federal context, equitable tolling may excuse a claimant's failure to comply with a limitations period if the claimant had "neither actual nor constructive notice of the filing period." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). The doctrine focuses on "whether there was excusable delay by the plaintiff: 'If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" *Id.* quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). The doctrine is "to be applied only sparingly" *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997), and the plaintiff bears the burden of establishing that "(1) that he pursued his rights diligently and (2) some extraordinary circumstances prevented timely filing." *Glenn v. Wilkie*, 2020 WL 3839633, at *4 (W.D. Wash. July 8, 2020).

Plaintiff has not met the requirements for equitable tolling. A "reasonable plaintiff" in the same circumstances as Plaintiff would have known of the "existence of a possible claim" by May 5, 2022 at the latest, when Chase Bank informed him that it would not reimburse his accounts for most of the fraudulent transactions. At that point, Plaintiff knew the amount of each denied claim and the reason for the denial. Plaintiff suggests that he was unable to file his EFTA claim until the

Bank provided him with a copy of its investigation file. This allegation is contradicted by the complaint, which sets forth the total amount of the fraudulent transactions, as well as the Bank's reasoning for denying Plaintiff's reimbursement requests, all without the benefit of the investigative file. Simply put, that Plaintiff did not receive a copy of the investigative file does not constitute "extraordinary circumstances" that prevented him from timely filing suit. *See, e.g., Roller v. Red Payments LLC*, 2021 WL 505558, * 4 (E.D.N.Y. Feb. 11, 2021) (rejecting plaintiff's request for equitable tolling due to defendant's alleged refusal to cooperate in "attempt to resolve [the] matter informally" because defendant's "refusal to provide information or paperwork regarding the allegedly unauthorized payment processing account in no way 'prevent[ed] [plaintiff] from exercising [his] rights' to file [the] suit").

**B.      The Breach of Contract Claim**

The parties agree that the written agreement that governs the relationship between Plaintiff and Chase Bank with respect to Plaintiff's accounts at the Bank is the Deposit Account Agreement ("DAA"). Section III.D.5 of the DAA provides, in pertinent part:

> **5. In case of errors or questions about your electronic funds transfers**
> If you think your statement is wrong, or it you need more information about a transaction listed on it, see the *How to Contact Us* section.
>
> **For personal accounts only, the following procedures apply:**
>
> We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared. Please provide us with the following:
> - Your name and account number;
> - A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
> - The amount of the suspected error.
>
> . . .
>
> You may ask for copies of the documents that we used in our investigation.

Dkt. 1, Ex. A. at 13 (bold, italics, capitalization in original).

The parties interpret the foregoing provision differently. The Bank claims that the provision requires a customer to report an error within 60 days of *any* error appearing on the customer's bank statement. The complaint alleges that the first fraudulent transaction occurred on April 20, 2020 in the checking account and September 29, 2020 in the savings account; thus, the errors appeared on the May 1, 2020 and October 1, 2020 account statements, respectively. Under the Bank's interpretation of the DAA, Plaintiff was required to notify the Bank of the errors no later than July 1, 2020 and December 1, 2020, respectively. Plaintiff first notified the Bank of the fraudulent transfers on April 12, 2022; therefore, the Bank argues, Plaintiff's notification is untimely.

Plaintiff counters that Chase Bank is wrong to construe the numerous fraudulent transfers over the years "as a single, collective 'error.'" Dkt. No. 24 at 4. Rather, Plaintiff argues, each fraudulent withdrawal is a distinct and separate error. *Id.* "Plaintiff does not allege that the same error was repeated on any of his statements—rather, Plaintiff alleges that there were hundreds of separate fraudulent withdrawals that took place over the course of two years." *Id.* Plaintiff argues that the DAA requires a customer to report an error within 60 days of *that* error appearing on the bank statement. Therefore, Plaintiff argues, because he reported the fraud to the Bank on April 12, 2022, he is entitled to recover $140,306.58 in fraudulent withdrawals that appeared on the February 1 through April 1, 2022 statements, an amount that the Bank has refused to credit to his accounts.

The parties cite to no case law or other documents interpreting the DAA, but rather simply offer their competing interpretations of the agreement. On a motion to dismiss, the Court must construe the complaint in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Wyler*, 135 F.3d at 661. If Plaintiff's interpretation of the DAA is correct,

then he has plausibly stated a claim that Chase Bank is liable for breach of the parties' written agreement and the motion to dismiss the breach of contract claim must be denied. *Iqbal*, 556 U.S. at 677-78.

The motion to dismiss the breach of contract claim must be denied for an additional reason. Plaintiff points out that the DAA requires Chase Bank to investigate any discrepancies brought to its attention within a certain number of days and that Plaintiff is entitled to a copy of the documents the Bank reviewed as part of its investigation. Plaintiff alleges that despite repeatedly requesting the materials, to date, the Bank has refused to provide him with a copy of its investigative file. Plaintiff also points out that the Bank's correspondence regarding its alleged investigation of the fraudulent transactions is full of "inconsistencies and bizarre factual inaccuracies" and "there is no indication that [Chase Bank] actually conducted an investigation into [his] claims, let alone adequately." Dkt. No. 24 at 4. For instance, in an April 25, 2022 letter, the Bank claims that it will not credit three transactions that occurred on April 12, 2022 because they "occur[red] more than 60 days" after the Bank sent the "first statement on which these transactions appear, which was 4/30/2022." Dkt. No. 18, Ex. E. By the very terms of the April 25, 2022 letter, Plaintiff is entitled to be reimbursed for the April 12, 2022 transactions because they were reported well within the 60 day window of April 30, 2022. The same inconsistency exists in an April 26, 2022 letter from Chase Bank. *Id.* at Ex. F. Other letters contain insufficient evidence for Plaintiff to determine if the Bank's analysis is correct. For instance, a May 5, 2022 letter alleges that the challenged transactions occurred more than 60 days after the Bank sent the first statement for the transactions related to the claims, but does not state the date of the statement. *Id.* at Ex. G. Other letters claim that the Bank will not credit transactions because they were credits for "loan payments the client received and spent" yet Plaintiff claims that he has never taken

loans with the Bank. Dkt. No. 24, Ex. C. Lastly, when Plaintiff requested that the Bank revisit its determinations regarding the fraudulent transaction, Chase Bank responded with a letter dated November 28, 2022 that contradicted the number of fraudulent transactions and amounts as listed in the previous letters, without providing an explanation for the discrepancies. *Id.*

The complaint alleges that not only did the foregoing actions by the Bank breach the implied duty of good faith and fair dealing that it owed Plaintiff under the DAA, but the Bank also breached the DAA by failing to provide Plaintiff a copy of the Bank's investigative file as it is obligated to do upon request. These allegations regarding the adequacy of the Bank's alleged investigation, as well as its alleged failure to provide a copy of its investigative file are also sufficient to state a claim for breach of contract and breach of the implied duty of good faith and fair dealing.

### C.    The Negligence Claim

To state a claim for negligence, Plaintiff must establish "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Ranger Ins. Co. v. Pierce Cnty.*, 192 P.3d 886, 889 (Wash 2008). The Complaint identifies three bases on which Plaintiff claims Chase Bank owed him a duty of care: (1) the "duty to exercise reasonable care and competence in investigating [his] claims"; (2) the "duty to comply with NACHA Rules and make reasonable efforts to recover the fraudulently withdrawn funds"; and (3) based on his status as a Chase Private Client, the duty to "protect Plaintiff from unreasonable risk of fraudulent activities on his [a]ccounts." Comp. ¶¶ 141-145.

Chase Bank argues that Plaintiff's negligence claim must be dismissed as a matter of law pursuant to Washington's independent duty doctrine, which bars an individual from "recover[ing] for a negligence claim that sounds in a breach of contract." *Harris v. U.S. BankCorp*, 2019 WL

5536402, *6 (W.D. Wash. Oct. 25, 2019). Chase Bank argues that the negligence claim is barred by the independent duty doctrine because the Bank had no duties independent of the DAA that governs the parties' relationship. Plaintiff counters that the independent duty doctrine is not applicable to this case because the doctrine is limited to claims arising out of construction and/or real property sales. Plaintiff further argues that the doctrine does not apply because the Bank owed him duties independent of the DAA, specifically, duties under the NACHA Rules and as well as fiduciary duties conferred on him as a Chase Private Client.

As both parties acknowledge, Washington State recognizes the "independent duty doctrine" between contracting parties, which provides that "[w]hen no independent tort duty exits, tort does not provide a remedy." *Busey v. Wells Fargo Bank, N.A.*, 2020 WL 5891907, *4 (W.D. Wash. Oct. 5, 2020) *quoting Eastwood v. Horse Harbor Found., Inc*., 170 Wash. 2d 380, 389 (2010)). The rationale behind the doctrine is the belief that when parties have entered into a contractual relationship, "the law of contracts is better suited to govern the relationship so courts should not create recourse in tort that would not exist independent of the contract's terms." *Id. citing Elcon Const., Inc., v. E. Wash. Univ.*, 174 Wash. 2d 157, 165 (2012). The Washington Supreme Court has cautioned that the doctrine should be used "sparingly" if an independent tort duty exists outside the contract.[1] Thus, the viability of Plaintiff's negligence claim depends on whether Chase Bank owed him a tort duty independent of the DAA.

"The existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent." *Snyder v. Med. Serv. Corp. of E. Wash*., 145

---

[1] Plaintiff's claim that the doctrine is applicable only in cases involving construction on or the sale of real property is incorrect. Numerous courts have applied the doctrine outside that context. *See*, *e.g.*, *Harris v. U.S. BankCorp*, 2019 WL 5536402 (W.D. Wash. Oct. 25, 2019; *Busey v. Wells Fargo Bank, N.A*., 2020 WL 5891907, *4 (W.D. Wash. Oct. 5, 2020).

Wash. 2d 233, 243 (2001) (internal quotation omitted). A duty may derive either from statute or common law, but absent a duty, "an action in negligence will not lie." *Swiss Baco Skyline Logging, Inc., v. Haliewicz*, 18 Wn. App. 21, 27 (2005). As stated above, Plaintiff alleges that there are three bases for Chase Bank's duty to him, the duty to reasonably investigate his claims, the duty to comply with the NACHA Rules, and the fiduciary duty owed to him as a Chase Private Client. The first alleged duty—the duty to reasonably investigate his claims—is barred by the independent duty doctrine because that duty arose from the DAA. The second alleged duty— the duty to comply with the NACHA Rules—is also barred by the independent duty doctrine because Plaintiff alleges that the NACHA Rules are incorporated into the DAA through the ACH Payment Services Agreement addendum. See Dkt. No. 24 at 11.

However, the Court concludes that Plaintiff has plausibly alleged that Chase Bank owed Plaintiff a fiduciary duty as a Chase Private Client. While generally a bank and its depositor operate at arm's length and do not enter a fiduciary relationship, "special circumstances may establish a quasi-fiduciary relationship in fact where one would not normally arise in law." *Annechino v. Worthy*, 252 P.3d 415, 143 (Wn. App. 2011). Whether "such a fiduciary relationship exist[s] … depends on the development of factual proof." *Liebergesell v. Evans*, 613 P.2d 1170, 1176 (Wash. 1980) (noting that a lack of business expertise by one party, a friendship between contracting parties, superior knowledge, and the assumption of the role of advisor may all contribute to the development of a fiduciary relationship). Here, the complaint alleges that as a Chase Private Client, Plaintiff was afforded "personalized attention from a 'team of professionals' dedicated to helping manage [his] 'financial and everyday banking needs' and [to] 'plan the extraordinary.'" Comp. ¶ 12. The complaint claims that this personalize attention was afforded to him, not under the DAA, but because he maintained an average daily balance of at least $150,000.

16

*Id.* at ¶ 11. It further alleges that Plaintiff "worked closely and often with his Chase Private Client team" and that he relied "his Private Client team of professionals to monitor and safeguard his deposits." *Id.* at ¶¶ 14, 22. It also claims that the Bank represented to him that he "was a very important customer" and that it "would do everything it could to resolve the matter to [Plaintiff's] satisfaction." *Id.* at ¶¶ 60, 64. The complaint also alleges that his Chase Private Client team advised him where to place his money. *Id.* at ¶ 66. These allegations are sufficient to plausibly allege the existence of a fiduciary relationship between the Bank and Plaintiff. Thus, the motion must be denied as to the negligence claim to the extent that it is based on the alleged fiduciary duty that the Bank owned Plaintiff.

### D.    The NACHA Rules Claim

The complaint alleges that Chase Bank violated the NACHA Rules by failing to "properly avail itself" of the NACHA procedures for "recovering ACH transactions." Dkt. No. 24 at 12. The National Automated Clearly House Association ("NACHA") Rules establish the contractual obligations between the national network of banks and financial institutions that transfer funds electronically to and from bank customers' accounts. *Clinton Plumbing and Heating of Trenton, Inc. v. Ciaccio*, 2010 WL 4224473, *8 (E.D. Pa. Oct. 22, 2010). Notably, the Rules establish the contractual obligations *between the financial institutions* involved in the electronic transfers and specifically state that "[n]othing in these rules is intended to, and nothing in these rules shall be implied to, give any legal or equitable right, remedy, or claim to other entity, including [any customer who received the funds], [customer from whose account the funds were withdrawn], Third-Party Service Provider, or Third-Party Sender." *Id. citing* NACHA Operating R. § 1.9.

Chase Bank argues that because Plaintiff is not a party to the NACHA Rules and, indeed, is specifically excluded from the Rules by §1.9, he cannot assert a claim for an alleged breach of

the Rules. Plaintiff counters that the NACHA Rules were specifically incorporated into the DAA between the parties through a separate agreement known as the ACH Agreement. Plaintiff did not assert this claim in the complaint, but rather, raises it for the first time in his opposition to Chase Bank's motion to dismiss. Regardless, Chase Bank submits a declaration from Mark C. Wright, an executive director of the Bank, which clarifies that the ACH Agreement is not incorporated into the DAA between the Bank and Plaintiff because ACH Payment Services and the associated ACH Agreement are only available to "Private Bank" customers[2] and/or customers with business checking accounts,[3] neither of which apply to Plaintiff. Because the complaint has failed to allege that Plaintiff is an intended beneficiary of the NACHA Rules, and indeed it appears that the Rule specifically exclude the possibility that he is an intended beneficiary, his claim based on the Rules must be dismissed.

### E.   The WCPA Claim

The Complaint alleges that Chase Bank violated the Washington Consumer Protection Act, RCW 19.86 *et. seq*. ("WCPA") by failing to conduct an effective "investigation into the timely reported fraud claims" in violation of the DAA. Comp. ¶ 172. The Complaint further alleges that the Bank committed a per se violation of the WCPA because the Bank also violated the EFTA and NACHA Rules. *Id*. ¶¶ 176-177. To plead a plausible WCPA claim, a plaintiff must allege facts that satisfy the following elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her

---

[2] Mr. Wright's declaration clarifies that Plaintiff is a "Chase Private Client" customer, which is distinct from a "Private Bank" customer. While ACH payment services are offered to "Private Bank" clients, they are not offered to "Chase Private Client" customers.

[3] Mr. Wright further clarified that although Plaintiff did have a business checking account, the Bank "has no record that [Plaintiff] accepted the ACH Agreement], or was ever eligible for the feature." Dkt. No. 27 at ¶ 8. Moreover, the fraudulent transfers were withdrawn from his personal checking account not his business checking account.

business or property; (5) causation." *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). "A [WCPA] claim may be based on a per se violation of a statute or on unfair or deceptive practices unregulated by statute but involving the public interest." *Blake v. Fed. Way Cycle Ctr.*, 698 P.2d 578, 581–82 (Wash. Ct. App. 1985). "A per se unfair trade practice exists when a statute that has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 396 P.3d 351, 367 (Wash. Ct. App. 2017).

Here, Plaintiff cannot establish a per se violation of the WCPA because the Washington Legislature has not declared that a violation of the EFTA or the NACHA Rules constitutes a per se violation of the WCPA. *See Merriman*, 396 P.3d at 367; *Lemelson v. Wells Fargo Bank, N.A.*, 641 F Supp. 3d 1005, 1013 (holding that plaintiff did not state a per se violation of the WCPA because the Washington Legislature has not declared that a violation of the Uniform Commercial Code constitutes a per se violation of the WCPA). Plaintiff must, therefore, plausibly allege another ground for the public interest element of his WCPA claim.

Where an unfair or deceptive act or practice is not based on a statutory violation, a plaintiff must show that "the alleged act had the capacity to deceive a substantial portion of the public." *Hangman Ridge*, 719 P.2d at 535. An alleged deceptive act or practice does not meet this requirement if it is "unique to the relationship between plaintiff and defendant." *Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. Ct. App. 2012). Thus, "[t]o establish an unfair or deceptive act, there must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Id.* at 737.

Chase Bank argues that Plaintiff's WCPA claim fails because the complaint does not allege facts that demonstrate that there is a "real and substantial potential" that the Bank's alleged

conduct has the potential to deceive the public at large. The Bank also charges that Plaintiff complains that the Bank failed to investigate his claims when it "**did** investigate his dispute." Dkt. No. 17 at 14 (emphasis in original). This Court concludes that Plaintiff has sufficiently stated a claim under the WCPA. First, as pointed out *supra*, Plaintiff alleges numerous errors and inconsistencies in Chase Bank's alleged investigation of his claims, errors and inconsistencies that are so significant the Court is left with the impression that the Bank performed a cursory investigation at best, if it performed an investigation at all. And second, as Plaintiff points out, Chase Bank represents on its website that it serves "over 60 million households". It is plausible to infer that a large portion of those relationships are governed by the DAA and so Plaintiff is entitled to discovery regarding other potential failures by the Bank to properly investigate fraudulent transfer claims as it is required to do under the DAA. Therefore, the motion is denied as to the WCPA claim. *See Bahnke v. Ahrens*, 294 P.3d 729, 735-36 (Wash. Ct. App. 2012) (noting that determining whether an deceptive act has the capacity to deceive a substantial portion of the public is a question of fact).

//

//

//

//

//

//

//

//

//

## V.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS in part and DENIES in part Chase Bank's motion to dismiss. Specifically, the Court GRANTS the motion as to the EFTA and NACHA Rules claims and DENIES the motion as to the breach of contract, breach of implied duty of good faith and fair dealing, negligence[4], and WPCA claims.

Dated this 29th day of March 2024.

Barbara      Jacobs      Rothstein
U.S. District Court Judge

---

[4] The portion of the negligence claim that survives the motion to dismiss is Plaintiff's allegation that Chase Bank owed him a fiduciary duty as a Chase Private Client.